Very good. Our last case is number 17-13602, Elaine Carroll v. Carnival Corporation. Mr. Parrish. Good morning. May it please the Court, Philip Parrish on behalf of the appellant, Elaine Carroll. We are here today on Genova review of a summary judgment in a maritime cruise line slip and fall case. It is our contention that the District Court erred in granting summary judgment because there is not only constructive notice in this case of the danger, but actual notice of the danger, and in addition, the District Court erred in finding that the danger was open and obvious as a matter of law rather than a factual issue, as most of the decisions from this Court hold it to be. In terms of the actual notice, we have a deck supervisor, Samudiak, who testified that you never leave the chair unattended and flat in that area, and that if a lounge chair is set within the passenger walkway, it would be an obstruction. It is a reason why a person can get injured. We also had in this case an unusual circumstance. I think there may be a dispute of fact, whether it is material or not is a different question, but as to how the chairs were positioned at the time, right, there is different testimony from different people about whether they were in one position or another, all of them were, some of them were, or the like, right? Your position is that they were set up in a way so as to obstruct the narrowing pathway that had to be traversed to get into the restaurant. Correct. Right. But that's, there's disputed testimony as to how many of those chairs were in that way, right? Well, yes, there's testimony, but the significant, I mean, the fact that there's a dispute is the inference has to go in favor of the plaintiff, and the testimony that supports the plaintiff is that there were, that most of them were in a lay-flat position, and that they were not only in lay-flat, but that they were not necessarily in line. Mr. Carroll testified that he had to sidestep one of the chairs that jutted out even further at or about the time that his wife fell. No, I know, I know, and any differences in testimony, obviously, you get the benefit of it, summary judgment, but I don't have the person's names, but I have the docket entry numbers, and you have one witness saying that the chairs were all in a lay-flat position. You have another witness saying that they were all kept in an upright position. You have another witness saying that most of them were down. You have another witness saying that they were, quote-unquote, out of order, and another one saying they were in a line and not messed up. It doesn't sound like summary judgment to me. Well, no, my only point is that there's a dispute of fact as to how the chairs were lined up at that point in time, but I know that to the extent that that dispute is material, you get the benefit of that dispute. Correct. On the other hand, if the plaintiff, if the situation, whatever it was, was open and obvious to the plaintiff, let's assume her husband didn't step in front of her. She walks up by herself. She sees something that's open and obvious, and then she trips. That seems to me a pretty straightforward case of open and obvious and no liability. The fact that she was walking behind her husband, it seems to alter this to some degree, and that's what I'm trying to get a handle on, because maybe it isn't open and obvious after she's behind him. I don't know. Well, and that's our contention. First of all, under Aponte, which this court decided in the last year, when the plaintiff says she didn't see the chair, the leg that she tripped on, the court has to take that into consideration. It's not simply that there's a chair there. In that case, there was a puddle of soap that the plaintiff said they didn't see, even though the defendant said, well, if you'd been looking at it, you would have seen it. The issue is, what is it that, we have to take all of the factors into consideration. In other words, slip and fall cases are usually a lot more nuanced than people think. I refer to them as the Rodney Dangerfields of cases, but they're often much more complex than one might think. In this case, you've got the husband who is forced by this situation to merge in front of his wife. She's following along closely behind him. Everybody agrees he's a fairly large person. She's also, at the same time, and here's another factor, she's worried about the fact that there is a little channel under the railing that's there for drainage and there are diagonal buttresses coming from the railing to the interior edge of that channel. She's worried about tripping on that as well. Our theory here is not simply that this chair is there. That was in plain view as she approached it alongside her husband. She testified that she didn't realize that it was going to narrow like that. The other factor here is that we have a situation where we have an expert, and the cruise line didn't even bother to retain an expert, because our expert testifies that the situation where any of the chairs are in lay flat position is a danger because it does not meet the SOLAS safety of life at sea convention requirement that there be 36 inches for this walkway. When these chairs are laid flat, there's only about 20, 22 inches. Then you've got the other factors coming in from the side. Our expert also pointed to Carnival's own guidelines, which say that they expect people not to necessarily be walking around looking exactly where they're walking because they're out on an exterior deck. They're expected to be looking at the ocean and at other things. We have a- She was on notice at this point that there was this condition, whatever existed. And that maybe it was, whatever the situation was, was open and obvious to her. And then she goes behind her husband. And then at that point, she continues to not look down and watch her step. It seems to me, under those circumstances, pretty unusual that a person would not be careful. Well, nobody's suggesting that she wasn't being careful, but that she nevertheless- She wasn't being careful if she tripped and she was looking off over the ocean or whatever. Well, so she testifies that she's got her husband directly in front of her, that she's also worried about the diagonal buttresses coming from the left, and that she did not see the chair that she tripped on. Now, her husband suggests that that chair was, at least the inference in favor of the plaintiff, is that that chair was even further out than perhaps some other chairs. So if you've got- Our contention is that these chairs shouldn't be up there in the first place. So it's not simply a matter of a chair being there or not being there. They were on notice that they're violating SOLAS provisions by having a narrow walkway. And that's why I suggest Samudia testifies, we understand. If you believe them, they're constantly being vigilant. They shouldn't have been up there, but that's not- That's negligence. Well, essentially you're saying it's sort of a per se condition. Still open and obvious becomes a defense. If it's one person just walking there and walking down and seeing a dangerous condition that's open and obvious, and then the person doesn't pay attention to it, it just falls, drips, that's a different- that's not this case. But under those circumstances, there wouldn't be liability. Well, there wouldn't be liability for failure to warn. Keep in mind that open and obvious is only a defense to failure to warn. It's not a defense to negligent maintenance. And our theory on negligent maintenance is that you should not have maintained these premises in this fashion. You shouldn't have had these chairs out here where when they are laid flat, as you expect them to be laid flat on the sun deck for passengers to take sun, maybe take a nap up there, you have shortened, narrowed this walkway in violation of industry standards. And that is evidence of notice as well. We also have 12 prior- Your argument, I want to make sure I understand it given what you just said, is that to the extent that Ms. Carroll should have or did realize that a danger was open and obvious, that does not go to your claim for maintaining a dangerous condition. Correct. Right, which is separate. And that's some, for example, a Florida court applying admiralty law has come to that conclusion in grubs. Right. And the dangerous condition that you're asserting is the location of the chairs on that deck? So, it's a factor of- it's three things. It's the narrow space between the prone lounge chairs and the braces of the railing. Yes, on that specific area, that deck. The, quote, messed up, as Mr. Carroll testified, configuration of the chairs and the fact that the chair legs protrude out a little bit. So, even if you sense that you're making it past the chairs, that the legs stick out a little bit and the pictures will demonstrate that. So, our theory is that it's not just the fact that there are chairs up there. You know, it's where- that you've put chairs up there in a fashion where if they're used in the fashion that you know they're going to be used and you admit that it would be a dangerous condition if they're laying flat, then you are on notice, both actually and constructively, that this is a dangerous condition. And if it's so dangerous that you say- you have three different types of people through there all the time. You say you've got your deck supervisor. You say you've got security. You say you've got hotel stewards through there constantly, making sure that they're not laying flat. If you know that, then you shouldn't have those deck chairs there because it's too dangerous to have them there. With respect to that situation, the 22 other incidents that you say should have- Twelve. Twelve. Right, the 12. Those don't relate to those chairs in that particular narrow place, right? No, they don't, but they don't have to. They're tripping over chair incidents. They don't have to, but they are tripped over- 10 of the 12 specifically reference tripping over the legs of the chairs, which is what occurred here. Now, in Sorrell's, this court said it doesn't have to be identical. There's some play in the joints when you're talking about substantially similar incidents in order to establish constructive notice. And in Tyrol, following Sorrell's, this court said you don't have to prove that somebody tripped on that step. You just have to prove that somebody tripped on a step in a theater in one of the cruise line ships. So here we have a situation where it's the same kind of chairs and in other situations where there's more room, people are tripping over them. So if you take those chairs where you know they're going to be in a laid flat position and when they're in a laid flat position, they violate SOLAS and other regulations, which- and this is in the record- they didn't file a Daubert motion and they didn't even depose our expert and they don't have their own expert to suggest that it wouldn't violate that. So that in and of itself- Let me ask you a favorable question. Okay. I like those. Every once in a while, you get them. Why do you need the allegedly substantially similar incidents if you have direct testimony from a carnival supervisor that these deck chairs are not supposed to be left in that position at that deck? I don't. I don't. I think I believe both of you, Judge Pryor and Judge Jordan, were on the Frasca case and there we had set out three possible notices and you said we're only going to address one because that's all you had to address. So if we meet either actual or constructive notice on any theory, we've got it on the violation of industry safeguards. That's some evidence of negligence and some evidence that there's notice because they're supposed to be aware of those statutes. And we've got it on actual notice from Samudiak's testimony. We don't have to have the substantially similars. But, you know, I wanted to put them all into the brief, obviously, and argue them all. In terms of open and obvious- We've taken you over your time, Mr. Parrish, so you can go into your rebuttal if you want or you can save it. I'll save it. Okay. We'll see you in a little while. Ms. Wiley. Good morning, and may it please the Court. Stephanie Wiley on behalf of the Abilene Carnival Corporation in this matter. The issues presented in this appeal lead the Court down a well-worn path in maritime law, and that path has to start with the established and fundamental notion that strict liability does not apply. They have to prove fault and the cruise line is only liable in the event it was negligent. The plaintiff bears that burden of proof of demonstrating that negligence, as is the case here where the plaintiff fails summary judgment is appropriate. With regard to the open and obvious condition, the District Court reviewed the evidence in detail and a very good question posed to counsel was what exactly is the hazard that is alleged here, and I think we have to start with that analysis. As indicated in the initial brief, Ms. Carroll was distracted. She's distracted. She testified by the beauty of the water around her on the ship. She was distracted by the railing next to her. She's distracted by the posts that hold up the railing. Her view of the path ahead of her was initially clear. She perceived the lounge chairs that were ahead of her. She perceived the path to some extent, and then her view was obstructed as she elected to walk very closely behind her husband. She's distracted and obstructed at the time of her fall. Then the pathway was not straight as she had apparently perceived. The pathway curved. There's a semicircular to her right as she approaches where she fell. There's a semicircular glass. There's the semicircular row of lounge chairs. To her left is a semicircular railing. This is a perimeter balcony, a very small area. As you can see from the photographs and the record, this area is led up to stairs. They went up the stairs from deck 10 to deck 11, go on to this perimeter balcony for a side entrance to the restaurant. As she approaches this perimeter balcony, everything contextually is semicircular in nature, yet she did not perceive the semicircular path and assumed it was straight. Let's talk about factual issues first. The district court said in its summary judgment order that Ms. Carroll stated that she did not walk behind her husband because the area narrowed, as her husband had explained, rather because that's just what you do. But there was also evidence from Ms. Carroll and her husband that she was in fact forced to walk behind her husband due to the layout of the lounge chairs. Is that not accurate? That is accurate. I don't think it's material. Whether she was walking behind her husband because the path narrowed or because she chose to is really not the point. The point is she did voluntarily elect the distance that she would allow between her husband and herself as she walked. If she wants to leave sufficient space to perceive her surroundings, that was in fact her choice. You talked about the fact that liability can't be based on strict liability principles and you're obviously right about that. What do you do with the testimony of the carnival supervisor who explained that these chairs were not supposed to be left in that area in the way alleged by Ms. Carroll? Isn't that a direct acknowledgement that by leaving them up there carnival breached the duty of care? When you read his testimony in its entirety keeping in mind that this individual does not speak English as his first language. Reading the statements in context he explains that the chairs were understood to be used either in the upright or the prone position. He agreed on page 25, I agree that the lounge chairs are to be used in incline or decline. He's explaining yes, they can be set like this and set like that. Unfortunately, counsel didn't clarify what physically was going on at that point. Either they're upright or they're flat. Correct. The fact that they can be used both ways doesn't touch on how they're supposed to be left when they're not being used. This is a quote from his deposition that the lounge chairs are never to be left unattended and laid flat in that area. That's pretty direct. He also testified that when there are high wind circumstances that they are instructed to lay them flat and there's no comment there about whether they're to be attended or not. I know but this is summary judgment. You don't get the benefit of inferences. Reading his testimony in its entirety, he's also talking about that there's sufficient space in the path if the lounge chairs are left up and he's never measured it if they're down. But then you've got the plaintiff's expert testifying that these chairs when laid flat create violations of ADA standards and of industry standards and there was no contrary expert testimony. Why doesn't that get you to a jury on a breach of a duty of care? Because the expert didn't prove that the industry standards he's relying on apply to this particular space. Their theory is that the chairs should not have been in this particular space. There are stairs to get up to this deck. This is not a deck that needs to be ADA compliant. I don't think they're arguing that there's a problem if the chairs are in this particular space. That would have given 36 inches, right? And that would have been within standards and so forth. If the chairs had been welded in such a way that they could never be laid flat, it wouldn't be a problem. Both the plaintiff and counsel in the briefs and just now indicated that their theory of liabilities that the chairs should not have been placed on the deck at all. Full stop. They don't need that. They don't need that They've also argued that the chairs, the way they were left, did not create a sufficient pathway to get to the restaurant. That's been one of their theories throughout the case, right? Correct. Why don't they get to a jury on that claim? One, it's open and obvious condition. The open and obvious theory applies to failure to warn only, but not to negligence. Well, there is a dispute amongst the cases on that issue. It sounds more like contributory negligence might be what would be at issue with that. She saw what it was and she walked closely behind her husband and she was perhaps negligent in her own right. That's something for the jury, isn't it? If it's contributory negligence. The fact that she's distracted and obstructed by choice is not a cognizable theory of liability against the defendant. It's something that a defendant can use in terms of comparative fault, which applies in maritime law as a general matter. If there was an obstructed pathway, but the jury figures out that had she really been paying the attention she should have paid, she likely wouldn't have fallen and maybe it's a 40% versus 60%, then you get to mitigate damages in that respect. I would direct the court's attention to this court's decision in LaRue versus NCL. That decision came down in August of 2018 and the Supreme Court denied certiorari review. In that particular case, there was a failure to warn theory of liability as well as a negligent design theory of liability. The guest had walked out of her cabin over the door threshold to the balcony adjacent to her room. Then as she was returning back into her cabin, she tripped over the threshold. In that case, the court affirmed summary judgment, this court affirmed summary judgment on the basis that that was an open obvious condition. This court wrote, but federal courts need not even reach the defendant's actual or constructive notice of the risk-creating issue if they determine the condition was an open and obvious danger. The court concluded plaintiffs simply failed to negotiate a known and obvious hazard. In that case, LaRue, L-E-R-O-U-X versus NCL. That was not in your brief, right? It was supplemental authority filed with the court. I might have missed that. Can you spell the LaRue please? L-E-R-O-U-X versus NCL. Citation is 743 FED period APPX period 407. Is that from the circuit? I think this, I'm sorry? It's from the 11th Circuit. 11th Circuit Court of Appeals, August 14th 2018. The Supreme Court denied certiorari review on January 2019. I'd submit that this case stands for the proposition that the fact that the plaintiff simply failed to negotiate a known and obvious hazard isn't simply a comparative negligence issue. It was in fact the basis for the summary judgment which was affirmed and certiorari review denied. What is your view with regards to the difference between a failure to warn theory and the design of a dangerous condition theory? Are they one and the same in terms of what the elements are or are they different in terms of what the plaintiff does or doesn't do? There are some cases that are favorable to your position and some that are not. Some say that if you have a danger that's open and obvious, that eliminates liability per se. Some of them say that only goes to failure to warn but not to negligent design. Tell me from a general standpoint why one of those two doctrines works and the other one doesn't. I think I would adopt the reasoning of the LaRue court and that was where the failure to warn that the open and obvious condition negates both theories of liability. That is where the guests on board are obligated to exercise reasonable care for their own safety and the open and obvious defense applies to both theories of liability. You quarrel with the idea that you were on actual notice of the dangerousness here? Yes. Mr. Sementiuk? Yes. I don't read his testimony in the same manner. I think it's also important to note that his supervisor, the other pool and deck supervisor testified that both positions referring to the lounge chair being either inclined or declined, both positions are acceptable and Victor Sementiuk testified that he gets his instructions from Dennis Stravitzky. When the higher ranking officer is indicating I tell my staff both positions are acceptable that is the ship's position and that is the training that Victor said that he was instructed to follow. With regard to the allegation that there's to address your question as far as whether there's an issue of fact as to the condition of the chairs, Mr. Carroll testified that as he was walking along the pathway with his wife behind him, it was just at the moment that he started to have to move for an obstacle that was the same time that his wife felt one to three feet behind him. It's obviously not the same chair. He talked about some being in disarray. That doesn't matter. That's obviously not the chair that Ms. Carroll fell on. Nor is the chair if he's moving around a chair that's exactly where he is and he testified in his deposition that clearly that was not the chair that Ms. Carroll stepped on. What the condition was further down the pathway and where Mr. Carroll was at the time she fell was immaterial. The testimony is that on the pathway that she approached and the chairs were in line and in step as far as from where she started up to where she fell. Anything else is immaterial. What's the record evidence to support that? That any time right before she fell, the chairs provided the right amount of clearance. It wasn't phrased in that term. It was phrased that she perceived the lounge chairs to be in line and orderly as she approached, but they were curved. She went straight because she's distracted and obstructed and failed to perceive everything curved around her. That would seem to, in a way, cut in favor of her not tripping because to go straight would mean you go towards the railing more. The railing is to her left. She's going straight and the chairs are to the right. By going straight, she's moving in a way more towards the railing than the chairs. The railing is on this side. Chairs are on this side. They curve this way. As she goes straight, she's going closer to the rail than the chairs because she's deviating from the circular pathway. The path is moving to her left and, therefore, to go straight, she would be going more towards the railing than the chairs. The curve is to the right. The curve is to the right. She's going straight.  She's cutting off the angle, but she's going straight. The railing is on this side. She's going because the path is bearing to the right. The fact that she's going straight means that she's headed more towards the left side of the path. It's a semicircular. It's not going from this point off here. It's semicircular in that it's going in a manner that it would be half of a circle like this. When the chairs are bulging out and around commensurate with the railing. I can't describe it properly, but see that little diagram I've just drawn? This is her. She's walking straight. This is the railing over here. Those are the edge of the chairs there. She's headed towards the left side of the path. Even by going straight, the path is turning to her right. What I'm trying to describe is that it's not just a veering. It's a semicircular fashion. By going straight, she's clipping this side which is why her foot clipped the chair. It depends what straight means. You have your circle going this way, right? It does. If she goes straight this way, you're correct that she's getting closer to the chairs. If she veers straight from where the pathway initially began and she goes this way, then she's going closer to the rail. It depends what straight means. Straight this way or straight that way? Straight towards the front of the ship. In any event, with regard to the notice issue, I don't know that the court needs to get there because as it's stated in LaRue, once the open and obvious is established, there's case law to support the court doesn't get there. In the event that you go with the other line of supplies only to failure to warn, I want to address the notice issue. We've taken you way over your time. You can finish. I'll give you 45 seconds until you hit four minutes. Just very quickly, the hazard alleged is very unique to this space. This perimeter balcony, this particular configuration and their theory that the lounge chair should not be on this space. This space is a critical part of the analysis as to what is considered substantially similar. Not a single accident occurred in this particular place on this particular ship, nor did it occur on any of the sister ships that have a comparable space. The 12 prior incidents that were produced involved different ships, different parts of the ships, people by the pool, people by the lounge on a sun deck, completely different space. There's nothing about those incidents that would indicate to Carnival that they should not put lounge chairs on this particular perimeter balcony. All right. Thank you very much. Thank you very much. Mr. Parrish. I'd like to address two primary issues, but before I do that, the little exercise of drawing exhibit why this should not be a summary judgment case. Before I get to that, I think it's something very important with respect to LaRue and the case upon which it relies, which is Smith. I addressed this in the briefs, and I think it's important this court clarify this issue for the district courts below and for practitioners. There are essentially three types of claims that you typically see in maritime slip and fall cases. Failure to warn, negligent maintenance. We have those two claims here. The third is negligent design. That would be that you never should have designed this ship with any kind of curve on it. We're not saying that. You have to have evidence in that kind of case to show that the ship owner was actually in the shipyard essentially. That's the Rogers case out of this court. Directly involved in the design. That's not what we have here. LaRue was a case with only a negligent warning and a negligent design theory. It had no negligent maintenance theory. The issue in LaRue was a threshold of a couple inches in the cabin doorway leading out to the balcony. The plaintiff in that case was very familiar with the balcony. He had gone through that door before. Keep in mind that our plaintiff had never been in this area of the ship before. Where this started is in Smith. The language that was quoted to you from LaRue is directly out of Smith which says, but federal courts need not even reach the defendant's actual or constructive notice of a risk creating condition if they determine that condition was an open and obvious danger. The next sentence says, the duty to warn in the maritime tort context extends to only known dangers which are not apparent and obvious. This court is talking about the duty to warn there. Subsequently in the Smith opinion it talks about the negligent maintenance theory. The problem in that case was the plaintiff had no expert and the defendant did have an expert who opined that it wasn't negligently maintained in the way it was set up. There's language in Smith that was directed solely to the failure to warn that has been taken out of context by some of the district courts and it's now being taken out of context from LaRue which didn't even have a negligent maintenance theory. Judge Walker, to your point we're not suggesting that the chairs had to be bolted down but if you have this situation where a lay flat chair is going to violate solace then you should have only chairs that don't lay flat or shorter chairs. You can't maintain this ongoing activity which Mr. Samoudiak, by the way English may not be his language but I believe there's an interpreter there he has a legal degree in the Ukraine but he makes more money on Carnival being a deck supervisor. He was a sophisticated person. Spoke directly to the fact that the standard is that they're supposed to be laid flat. We understand they are capable of being up and down but we know that there's a danger when they're laying flat because they can impede on the walkway. You don't get this kind of testimony in most cases. Is there anything in the record about whether this was a windy day or not? It was not a windy day. Not the type of windy day where they talked about when you have to have laying flat or stacked up and not put out at all. The last thing I wanted to address if it's necessary is on open and obvious and I would direct the court's attention to Aponte where the gentleman was distracted because he was going to get a paper in his hands. Here we have distraction due to husband having to, as a result of everything we're talking about here and the way this is set up, having to cut in front of her the issues to the left which are also dangerous. She doesn't want to trip on that brace or slide off into that channel used for drainage. It's not the fact that an object is open and obvious either. It's the fact that the danger presented by it in its setup is open and obvious that would lead to that. In any event, open and obvious would not be a defense to a failure to warn. In this case, I don't think she should follow Guevara and Frasca and some other cases that Aponte suggested. That's a question of fact for the jury. You can't say as a matter of law that this leg was open and obvious under these circumstances. We'd ask the court to reverse. Thank you both very much. We're in recess until tomorrow.